IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 5, 2008

## DARRELL JENNINGS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
No. P-26688    Lee V. Coffee, Judge

**No. W2007-01087-CCA-R3-PC  - Filed October 21, 2009**

The petitioner, Darrell Jennings, was found guilty by a Shelby County jury of second degree murder and felony murder.  The trial court merged the convictions, and the petitioner received a life sentence.  Thereafter, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective.  The post-conviction court denied the petition, and the petitioner now appeals.  Upon our review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

James E. Thomas (on appeal) and Autumn Chastain (at trial), Memphis, Tennessee, for the appellant, Darrell Jennings.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Amy Weirich and Kirby May, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

On direct appeal, this court summarized the proof adduced at trial as follows:

In August 1998, sixteen-year-old Delmar Mason resided in Memphis with his seventy-one-year-old grandfather, Joe H. Mason. The proof established that Joe Mason conducted an unlicenced pawn

shop business from his residence and routinely accepted for pawn or purchase cars, jewelry, and clothing, along with other items of property. In addition, he made cash loans and would cash checks. At approximately 12:30 a.m. on August 24th, Delmar, his grandfather, his uncle, and his grandfather's friend had retired to bed when James "Gucci" Patterson and Kelvin Hooks arrived at the residence with a third-party check they wanted cashed. Joe Mason informed Patterson and Hooks that "the check wasn't no good." The two men left.

Approximately thirty minutes later, Patterson and Hooks returned to the residence accompanied by the [petitioner]. The [petitioner] was carrying "some Tommy Hilfiger clothes and [Hooks] came with . . . a leather jacket. . . ." Patterson, without saying a word, "sat on the couch, the opposite from [Joe Mason.]" Delmar Mason asked the [petitioner] "how much he wanted for the clothes." At this point, "Kelvin Hooks pulled his gun out on [Delmar] and told [him] to lay down." Delmar sat on the couch next to his grandfather. The [petitioner] and Hooks demanded money and the [petitioner] drew his weapon. Joe Mason stood up but was warned by the [petitioner], "Don't move old man." Disregarding the admonition, Joe Mason responded that he did not have any money and advanced toward the [petitioner], grabbing the gun away from him. Gunshots were fired and Delmar ran to his bedroom. James Patterson testified that after "Mr. Joe shot the gun," "that's when K-mack [Hooks] done what he done. He pulled his pistol . . . and went to shooting Mr. Joe." The perpetrators fled the residence.

When Delmar returned, he saw his grandfather staggering by the coffee table. Eventually, Joe Mason fell to the floor. Mason died as a result of four gunshot wounds to his chest. Delmar Mason gave accurate descriptions of the [petitioner], Hooks, and Patterson. He also identified the [petitioner] as one of the perpetrators from a photographic line-up a few hours after his grandfather's murder.

State v. Darrell Jennings, No. W1999-01036-CCA-R3-CD, 2000 WL 1863515, at **1-2 (Tenn. Crim. App. at Jackson, Dec. 1, 2000) (footnote omitted).

At the conclusion of trial, the jury found the petitioner guilty of felony murder in the perpetration of or attempt to perpetrate a robbery, as charged in count two of the indictment, and second degree murder, a lesser-included offense of first degree premeditated murder as charged in count one of the indictment. Id. at *1. The trial court merged the convictions into a single conviction for felony murder and sentenced the appellant to life imprisonment. Id. The petitioner appealed his felony murder conviction, and this court affirmed that conviction. Id.

Subsequently, the petitioner filed a petition for post-conviction relief and several amended petitions, alleging, among other grounds, that his trial counsel was ineffective. Specifically, the petitioner complained that counsel met with him only one time prior to trial and did not adequately prepare for trial. Additionally, the petitioner argued that counsel should have pursued a jury instruction regarding the natural and probable consequences rule as set forth in State v. Howard, 30 S.W.3d 271 (Tenn. 2000). The petitioner acknowledged that his case was tried before the Howard opinion was filed; however, he argued that Howard "was a reaffirmation" of State v. Carson, 950 S.W.2d 951 (Tenn. 1997).

At the post-conviction hearing, trial counsel testified that he represented the petitioner at trial and on appeal. Trial counsel said that since the petitioner's trial, he had moved his office to a new location. After the move, trial counsel could not locate the petitioner's case file and was unable to recall many specific details regarding the petitioner's trial. Nevertheless, trial counsel stated that he met with the petitioner a sufficient number of times to prepare for trial. He maintained that he would have requested a continuance if he had been unprepared for trial.

Trial counsel stated that he received discovery from the State and that he shared the discovery materials with the petitioner. Trial counsel stated that he believed he had interviewed all individuals related to the case or had at least reviewed the statements of the witnesses who were identified in the discovery materials. The petitioner's defense at trial was that he was present at the scene of the offense but that he did not have a gun and did not know that a robbery would occur. Trial counsel acknowledged that the State's proof at trial showed that the petitioner had a gun at the scene and actively participated in the robbery.

Trial counsel opined that the State's case was based on the petitioner's criminal responsibility for the actions of Hooks, the shooter. Trial counsel stated that the defense theory at trial was that the petitioner was not the shooter, did not know what Hooks was going to do, and was not criminally responsible. He recalled that the trial court instructed the jury according to the pattern jury instructions that were in place at the time of trial. Counsel said that, to the best of his recollection, during deliberations the jury asked the trial court if the petitioner could be found guilty of felony murder if all the elements of robbery had not been completed.[1]

Counsel said that in 2000, while the petitioner's direct appeal was pending, the Tennessee Supreme Court released its opinion in Howard, holding that when a defendant's guilt is based on criminal responsibility for the actions of another, the trial court must instruct the jury on the natural

---

[1] On direct appeal, this court observed that the jury asked the trial court

> "Does count two, homicide first degree murder, killing in the perpetration of other crimes include attempted robbery to the extent that essential elements of robbery, specifically number four and five, not necessarily be satisfied, i.e. took indicates the robbery was successful rather than just attempted."

Jennings, No. W1999-01036-CCA-R3-CD, 2000 WL 1863515, at *5.

and probable consequences rule.[2]  He acknowledged that <u>Carson</u>, which discussed the natural and probable consequences rule, had been released prior to the petitioner's trial.  However, trial counsel opined that "<u>Howard</u> . . . used the definitive language, basically, in my opinion, to do away with the felony murder rule, you know, when somebody had a theory of criminal responsibility."  Trial counsel said he did not raise the issue regarding an instruction on the natural and probable consequences rule in his appellate brief, but he raised the issue in his application for permission to appeal to the supreme court.  When asked if the outcome of the trial would have been different if the trial court had given an instruction like that proposed in <u>Howard</u>, counsel said, "I can't use the word probable, but . . . let me put it this way, I just kind of think that maybe it would have been different."

The petitioner testified that he had several prior convictions for fraudulent use of a credit card, second degree burglary, and attempted aggravated burglary.  Additionally, he acknowledged that he "was convicted of a B-felony drug case that was reduced to criminal attempt felony."  The petitioner admitted that he had occasionally used aliases.

The petitioner testified that trial counsel provided him with discovery materials.  However, he asserted that trial counsel visited him only once while he was in jail and then talked with him on a court date.  The petitioner said that he asked trial counsel to interview Jaqueline Jackson.  He maintained that Jackson would have testified that the petitioner did not own a pistol.  The petitioner also wanted trial counsel to call his sister, Margaret Moore, to testify that the petitioner was working at the time of the offense.

The petitioner maintained that he was at the scene of the crime to sell some stolen clothes that he had purchased at the park; he was not there to rob the victim.  The petitioner said the testimonies of the victim's grandson and the co-defendant that the petitioner had the gun were not true.  The petitioner conceded that trial counsel "did basically what [the petitioner] and he talked about doing."  The petitioner alleged that trial counsel could have done a better job representing the petitioner.

At the conclusion of the post-conviction hearing, the post-conviction court found that the petitioner had failed to establish that his trial counsel was ineffective.  The court specifically found that the petitioner was not credible and that trial counsel was credible.  The post-conviction court stated that trial counsel had adequately prepared for trial.  The court noted that at the time of the petitioner's trial, the trial court was obligated to fully and properly instruct the jury on the material issues regardless of whether counsel requested the instruction.  The post-conviction court found that

---

[2]  The natural and probable consequences rule

> extends the scope of criminal liability to the target crime intended by a defendant as well as to other crimes committed by a confederate that were the natural and probable consequences of the commission of the original crime.

<u>Howard</u>, 30 S.W.3d at 276.

the trial court had erred in not giving an instruction on the natural and probable consequences rule. Nevertheless, the post-conviction court determined that the error was harmless. The post-conviction court stated that the defendant in Howard "did not have a gun, was not present when the shooting took place, denied that he ever had a gun, denied that he was ever involved in the shooting." The post-conviction court noted that Howard concerned a defendant who was convicted of premeditated first degree murder under a theory of criminal responsibility. The post-conviction court found the instant case distinguishable from Howard in that the petitioner was convicted of first degree felony murder in the perpetration of a robbery. The court stated that in the instant case "the facts that were accredited at trial by the jury were that this [petitioner] entered into this victim's house, that he was actively involved in the robbery . . . that the . . . grandson of the victim . . . saw this [petitioner] with a gun, heard the [petitioner] make threats to the victim." The court found the instant case analogous to State v. Richmond, 90 S.W.3d 648, 657 (Tenn. 2002), wherein our supreme court found harmless error in a trial court's failure to give a natural and probable consequences instruction.

The court observed that the jury obviously accredited testimony that the petitioner was an active participant in the murder, to the point of brandishing a gun during the offense. Therefore, the court determined that there was not a reasonable probability that the result of the trial would have been different had the trial court instructed the jury on the natural and probable consequences rule. On appeal, the petitioner argues that the post-conviction court erred in failing to find that counsel was ineffective by failing to request a jury instruction on the natural and probable consequences rule and by failing to raise on direct appeal the trial court's failure to give such an instruction.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of

counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Initially, we note that the record before us reflects that the petitioner questioned trial counsel using a copy of the jury instructions and that the post-conviction court reviewed the jury instructions; however, the petitioner failed to include the jury instructions in the record for our review.[3] The petitioner carries the burden of ensuring that the record on appeal conveys a fair, accurate, and complete account of what has transpired with respect to those issues that are the bases of appeal. Tenn. R. App. P. 24(b); see also Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997). Generally, "[i]n the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). Nevertheless, we will address the petitioner's concerns.

At the time of the petitioner's trial, our criminal code provided that "[a] person was criminally responsible as a party to an offense if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." Tenn. Code Ann. § 39-11-401(a) (1997). Tennessee Code Annotated section 39-11-402(2) (1997) provided that a person is criminally responsible for the actions of another when, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Specifically, when a person is aware of the intentions of his co-defendant and proceeds to aid or attempt to aid in the endeavor, that person is responsible for all natural and probable consequences of his co-defendant's actions during the commission of the crime. See State v. Carson, 950 S.W.2d 951, 956 (Tenn. 1997).

---

[3] A portion of the jury instruction was included in the record; however, the portion concerned the question that the jury asked the trial court.

In State v. Richmond, 90 S.W.3d 648 (Tenn. 2002), our supreme court reviewed the history of the natural and probable consequences rule which we will briefly summarize as it relates to the instant case. Notably,

> [t]he natural and probable consequences rule arose as a common law component of criminal responsibility and extends criminal liability to the crime intended by a defendant, and collateral crimes committed by a co-defendant, that were the natural and probable consequences of the target crime. See State v. Carson, 950 S.W.2d 951 (Tenn. 1997). We have noted on several occasions that "criminal responsibility is not a separate, distinct crime. It is solely a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person." State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999).

Richmond, 90 S.W.3d at 654. In the Criminal Sentencing Reform Act of 1989, the legislature codified the common law doctrine of criminal responsibility, and "the legislature clearly intended that the natural and probable consequences doctrine survive codification." Id. at 656 (citing Carson, 950 S.W.2d at 955).

State v. Howard, 30 S.W.3d 271 (Tenn. 2000), which was released well-after the petitioner's trial, reiterated "that the purpose of the natural and probable consequences rule is to hold aiders and abettors 'responsible for the criminal harms they have naturally, probably and foreseeably put into motion.'" Richmond, 90 S.W.3d at 656 (quoting Howard, 30 S.W.3d at 276). The court in Richmond explained that Howard clearly "stands for the proposition that the natural and probable consequences rule is 'an essential element that the State must prove beyond a reasonable doubt' when seeking a conviction based on [a] theory of criminal responsibility." Richmond, 90 S.W.3d at 657. The court further observed, "More importantly, we put forth the test that courts are to apply when liability is based upon the natural and probable consequences rule." Richmond, 90 S.W.3d at 656. The court explained that

> the State must prove beyond a reasonable doubt and the jury must find: (1) "the elements of the crime or crimes that accompanied the target crime; (2) the defendant was criminally responsible pursuant to Tennessee Code Annotated section 39-11-402; and, (3) that the other crimes that were committed were the natural and probable consequences of the target crime."

Id. (quoting Howard, 30 S.W.3d at 276).

After Howard, this court examined whether a trial court was required to instruct the jury on the natural and probable consequences rule in cases of felony murder. See State v. Winters, 137 S.W.3d 641 (Tenn. Crim. App. 2003). In Winters, this court explained that "the felony murder

-7-

statute . . . does not require that a homicide committed during the course of one of the enumerated felonies be foreseeable." 137 S.W.3d at 659. In other words, "'[w]hen one enters into a scheme with another to commit one of the felonies enumerated in the felony murder statutes, and death ensues, both defendants are responsible for the death regardless of who actually committed the murder and whether the killing was specifically contemplated by the other.'" Id. (quoting State v. Hinton, 42 S.W.3d 113, 119 (Tenn. Crim. App. 2000)). Based upon Winters, the petitioner clearly was not entitled to an instruction on the natural and probable consequences rule in relation to the felony murder charge. Id. However, the natural and probable consequences rule is applicable in cases where the State seeks a conviction for first-degree premeditated murder based upon a theory of criminal responsibility. See Howard, 30 S.W.3d at 273. We again note that the petitioner was not convicted of first-degree premeditated murder; regardless, the natural and probable consequences rule is also applicable in second degree murder cases. See State v. Michelle Tipton, No. E2004-01278-CCA-R3-CD, 2005 WL 2008178, at *4 (Tenn. Crim. App. at Knoxville, Aug. 22, 2005).

The post-conviction court accurately noted that regardless of a request by counsel, the trial court was obligated to instruct the jury regarding the law applicable to the facts of the case. See State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986). The post-conviction court found that the trial court instructed the jury according to the Tennessee Pattern Jury Instructions in place at that time but that the instructions did not include the natural and probable consequences rule. The post-conviction court found that the failure to give such instruction was harmless error.

Given the timing of the Howard opinion in relation to the petitioner's trial and direct appeal, we cannot conclude that counsel deficient for failing to request a natural and probable consequences jury instruction regarding the charged offense of first degree murder. Obviously, as the Howard opinion was released during the pendency of the petitioner's first tier appellate review, counsel could have submitted the Howard opinion to this court as supplemental authority. Counsel admittedly did not do so. However, counsel raised the issue of a natural and probable consequences instruction in his Rule 11 application for permission to appeal. We conclude that, under the facts of this case, counsel did not act "'outside the wide range of professionally competent assistance.'" Torrey Lyonel Frazier v. State, No. E2007-02518-CCA-R3-PC, 2009 WL 774482, at *5 (Tenn. Crim. App. at Knoxville, Mar. 25, 2009) (quoting Strickland, 466 U.S. at 690), perm. to appeal granted, (Tenn., Aug. 17, 2009).

Regardless, we agree with the post-conviction court that the failure "did not, beyond a reasonable doubt, affect the outcome of the trial" and that the petitioner was therefore not prejudiced by trial counsel's failure to raise the issue of a natural and probable cause instruction at trial or on direct appeal. Richmond, 90 S.W.3d at 658; see also Derick Bailey v. State, No. M2004-02434-CCA-R3-PC, 2005 WL 2205901, at *5 (Tenn. Crim. App. at Nashville, Sept. 7, 2005). Therefore, the petitioner failed to prove that his trial counsel was ineffective.

## III. Conclusion

The judgment of the post-conviction court is affirmed.

_____
NORMA McGEE OGLE, JUDGE