IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 5, 2002 Session

**STATE OF TENNESSEE v. GENE BOOKER**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 00-06932     Chris Craft, Judge**

_____

**No. W2002-00133-CCA-R3-CD  - Filed July 8, 2003**
_____

The Appellant was convicted of aggravated robbery by a jury in the Criminal Court for Shelby County, and the trial court sentenced him to sixteen years of confinement as a Range II Multiple Offender. The Appellant raises the following issues on appeal: (1) whether sufficient evidence was presented at trial to convict the Appellant of the charged offense, and (2) whether the trial court erred in failing to charge the jury on the lesser-included offenses of robbery and theft. Finding no reversible error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID G. HAYES and JOE G. RILEY, JJ., joined.

Edwin C. Lenow, Memphis, Tennessee, for the appellant, Gene Booker.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stephen P. Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I.  FACTUAL BACKGROUND

Near dusk on September 3, 1999, George Rhodes drove an acquaintance, Jerri Brodger, to retrieve some clothes she had left at a house on Dempster Street in Memphis, Tennessee. Rhodes testified that while they were there, a red Ford Expedition pulled up to his truck, and several men exited the vehicle. According to Rhodes, one man, whom he later identified as the Appellant, Gene Booker, approached him and Brodger with a firearm in his hand and demanded money.

The Appellant then allegedly pointed the gun at Rhodes's chest and demanded that Rhodes get out of his truck. After Rhodes complied, the Appellant searched Rhodes while the gun remained

pointed at Rhodes's chest and head. Rhodes testified that the Appellant then took his wallet and removed money from the billfold. He then attempted to return the wallet, but Rhodes refused to take it, dropping it to the ground. Rhodes stated that he was frightened and that he believed he would be shot if he accepted the wallet.

After taking Rhodes's money, the Appellant walked to a nearby vehicle, squatted down, and began talking with the occupants inside the vehicle. During this time, Rhodes stayed next to his truck. Brodger testified that the Appellant came back, approached her side of the truck, and started "snatching" on her coat. When Brodger yelled that she was going to "have him locked up," he relented and said that Rhodes and Brodger could leave. Rhodes and Brodger then returned to Rhodes's truck and drove away. According to Brodger, the Appellant fired his gun one or two times as they were leaving the scene. After hearing the shots, she turned and saw the Appellant standing in the middle of the road.

Rhodes stated that the high-beam headlights of the Expedition provided enough light for him to see his assailant, and Brodger testified that she was able to identify the man with the gun when the lights in the cab of the Expedition came on as he opened the door and exited the vehicle. Although both victims testified that they had never spoken to the man before he robbed them, Brodger stated that she recognized the man as "Pee Wee" from around her neighborhood.

The following day, Rhodes and his friend, Roy Turner, drove past the area where the incident took place. According to Rhodes, he saw the Appellant on Horn Lake, a lake located near Dempster Street, with the same pistol that was used to rob him tucked into his waistband. After visiting the police station, Rhodes was able to identify the Appellant from a photo spread lineup. At trial, Rhodes and Brodger also identified the Appellant as their assailant.

After his trip to the police station, Rhodes attempted to ascertain where the Appellant lived. He asked people on Gage Street about the Appellant's whereabouts after a police officer told him it would help if he could find out where the Appellant lived. Melvin Webb, a defense witness, testified that when Rhodes questioned him on Gage Street, he told him that the Appellant's nickname was "Pee Wee."

Two days after his trip to Gage Street, and approximately one to two weeks after the incident, a woman tapped Mr. Rhodes on his shoulder while he was at work and indicated that "Pee Wee" wanted to talk to him. After this statement, the Appellant approached Rhodes and tapped him on the shoulder. When he turned around, Rhodes saw the Appellant, the woman who tapped him on the shoulder, and Webb. Rhodes testified that the Appellant stated that he was sorry for robbing him and that he was high at the time.

The Appellant called two alibi witnesses at trial. The first, Melvin Webb, testified that the Appellant accompanied him to a strip club from approximately 8:00 p.m. until 3:30 a.m. on the night in question. The second witness, Charles Price, also testified that the Appellant went with him to

a club, but stated that the men got together "between 8 and 9." He acknowledged on cross-examination that he was not entirely sure of the date.

Webb and another witness, Kathy Dibrell, further testified that they were the two people who accompanied the Appellant when he visited Rhodes at work. They both stated that when the Appellant discussed the incident in question with Rhodes at his place of business, Rhodes told them he did not know the Appellant and that the Appellant was not the one who committed the robbery. Webb also claimed that Rhodes stated that he was willing to sign an affidavit which stated that the Appellant did not commit the offense.

After testimony concluded, the trial court reviewed its jury charge with counsel. The trial court indicated that it did not intend to charge the jury on the offenses of robbery or theft as lesser-included offenses of aggravated robbery. Defense counsel objected to this ruling.

## II. ANALYSIS

### A. Sufficiency of the Evidence

The Appellant alleges that there is insufficient evidence in the record to support a conviction for aggravated robbery. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

In this case, the Appellant has failed to meet his burden of showing that the evidence was legally insufficient to convict him of aggravated robbery. See Evans, 838 S.W.2d at 191. Aggravated robbery is defined, in pertinent part, as "the intentional or knowing theft of property

from the person of another by violence or putting the person in fear," Tenn. Code Ann. § 39-13-401(a), which is "[a]ccomplished with a deadly weapon." Id. § 39-13-402(a)(1). At trial, the State presented the direct testimony of both Rhodes and Brodger, who testified that the Appellant robbed them at gunpoint by taking money out of Rhodes's wallet. Rhodes also testified regarding his fear of being shot if he did not comply and regarding the Appellant's subsequent admission of guilt and apology for committing the crime one to two weeks after the incident. Rhodes was also able to identify the Appellant out of a photographic lineup, and in open court both Rhodes and Brodger identified the Appellant as their assailant.

Although the Appellant claimed that he had an alibi for the night in question, the jury was free to reject the Appellant's testimony and accredit the direct testimony of Rhodes and Brodger instead. See State v. Reginald Garner Brown, No. M1999-00002-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 498, at *17-18 (Tenn. Crim. App., Nashville, Jun. 23, 2000). On appeal, this Court cannot overturn the jury's determination on questions of fact. Liakas, 286 S.W.2d at 859. Hence, we conclude that the evidence presented at trial was sufficient to sustain the Appellant's conviction for aggravated robbery.

### B. Failure of the Trial Court to Charge the Jury on Lesser-Included Offenses

The Appellant claims that the trial court committed reversible error by failing to instruct the jury on the lesser-included offenses of robbery and theft. The State concedes that robbery and theft are lesser-included offenses of aggravated robbery. Once a trial judge has determined that an offense is a lesser-included offense and that there is evidence which supports conviction for a lesser-included offense, then the court is under an obligation to charge the lesser-included offense. State v. Rush, 50 S.W.3d 424, 429 (Tenn. 2001). In the case at bar, the State concedes that the trial court erred in failing to give a jury instruction on the lesser-included offenses of robbery and theft, but argues that the trial court's error was harmless and does not amount to reversible error.

A defendant's right to a lesser-included offense instruction is mandated by Article I, section 6 of the Tennessee Constitution. State v. Ely, 48 S.W.3d 710, 727 (Tenn. 2001). Despite this, however, the Tennessee Supreme Court has held that the failure to instruct on lesser-included offenses may be harmless under certain circumstances. See State v. Williams, 977 S.W.2d 101, 105 (Tenn. 1998). If the State can prove beyond a reasonable doubt that the erroneous failure to instruct the jury regarding lesser-included offenses did not affect the outcome of the trial, the error is harmless. Id. In State v. Allen, 69 S.W.3d 181 (Tenn. 2002), the Tennessee Supreme Court held that the failure to instruct on a lesser-included offense is harmless beyond a reasonable doubt when the "omitted element [is] uncontested and supported by overwhelming and uncontroverted evidence." Id. at 190; see also State v. Garrison, 40 S.W.3d 426, 435 (Tenn. 2000); State v. Ducker, 27 S.W.3d 889, 899-900 (Tenn. 2000).

The facts of this case are analogous to those in State v. Richmond. 90 S.W.3d 648 (Tenn. 2002). In Richmond, the supreme court held that it was harmless error for a trial court to fail to issue instructions on the lesser-included offenses of simple robbery and attempted robbery in an

aggravated robbery case where evidence that firearms were used in the robbery was uncontested by the defense.  Id. at 663.  Here, like in Richmond, the State clearly relied upon the use of a deadly weapon to prove that the robbery was aggravated.  Both Rhodes and Brodger testified repeatedly concerning the gun that the Appellant pointed it at them.  Furthermore, Rhodes testified that he complied with his assailant's demands out of fear he would be shot if he did not.  The State also points to the fact that Rhodes learned of the Appellant's whereabouts the following day, when he returned to the area of the crime with his friend and recognized that the Appellant had the same gun tucked in his waistband that he had brandished the day before during the robbery.  In addition, both Rhodes and Brodger testified that they heard the Appellant fire his gun in the air as they drove away.  Based upon the record in this case, the jury could not have reasonably concluded that the Appellant was unarmed.  See id. at 661.

As in Richmond, the Appellant in this case presented no evidence contesting the facts that the victims were robbed at gunpoint and feared serious bodily injury.  Instead, the defense relied solely on a "case-of-mistaken-identity" claim and presented testimony that the Appellant was at a strip club with his friends when the robbery took place.  As the State points out, the jury's verdict in this case reflects that it rejected the only defense presented at trial – that the defendant was not there when the robbery took place.  The fact that a firearm was used in the robbery was uncontested.  In finding that the Appellant was there, the jury essentially foreclosed any possibility that it would have merely found the Appellant guilty of the lesser-included offenses of theft or robbery.

In sum, although the failure of the trial court to instruct the jury as to the lesser-included offenses of theft and robbery was error, we are convinced that the error was harmless beyond a reasonable doubt because no reasonable jury would have convicted the Appellant on the lesser offenses in light of the evidence produced at trial.

### III. CONCLUSION

We conclude that the evidence presented at trial was sufficient for the jury to convict the Appellant of aggravated robbery.  We also conclude that while it was error not to charge the lesser-included offenses of robbery and theft, the error was harmless beyond a reasonable doubt, as the evidence proving that the robbery was committed at gunpoint was overwhelming and uncontested by the Appellant at trial.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE