IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 12, 2005 Session

## STATE OF TENNESSEE v. MARLON AVERY BUSSELL

**Direct Appeal from the Criminal Court for Knox County**
**No. 76849    Richard R. Baumgartner, Judge**

---

**No. E2004-01239-CCA-R3-CD - Filed August 23, 2005**

---

Defendant, Marlon Avery Bussell, was indicted for first degree felony murder in count one, and for attempted especially aggravated robbery in count two. Following a jury trial, Defendant was found guilty of the lesser included offense of criminally negligent homicide, a Class E felony, in count one, and of the lesser included offense of attempted robbery, a Class D felony, in count two. The trial court sentenced Defendant as a Range I, standard offender to two years for his criminally negligent homicide conviction and four years for his attempted robbery conviction, and ordered the sentences to be served concurrently. The trial court denied Defendant's request that he be granted alternative sentencing, and ordered Defendant to serve his sentences in confinement. On appeal, Defendant challenges the length of his sentences and the trial court's denial of alternative sentencing. He does not challenge the sufficiency of the convicting evidence. Following a thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Mike Whalen, Knoxville, Tennessee, for the appellant, Marlon Avery Bussell.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Kevin J. Allen, Assistant District Attorney General, for the appellee, the State of Tennessee.

### OPINION

**I. Background**

Although Defendant does not challenge the sufficiency of the convicting evidence, a summary of the facts and circumstances surrounding the offenses is necessary in order to address the sentencing issues.

Kelan Williamson testified that Defendant came over to his house on July 10, 1998. Defendant was driving Khary Thompson's blue, four-door Ford Taurus. Warren Griffin also arrived at Mr. Williamson's house. Defendant suggested that the three men rob the victim, William Reid, because Defendant had heard that the victim had a safe in his house. Mr. Williamson's version of the sequence of events leading up to the victim's death is as follows.

Defendant told the men that he would carry a white bucket with the word "donations" written on it and ask the victim for a donation to a local basketball league. When the victim pulled out his wallet, Defendant would rob him at gun point. Mr. Williamson said that his assigned job was to carry the safe to the car. Mr. Williamson said that only Defendant was armed.

Mr. Griffin drove the Taurus to the victim's house and let Defendant out. Mr. Griffin and Mr. Williamson drove down the street and turned around. Mr. Griffin parked in front of the victim's house. Mr. Williamson got out of the car and stood by the side of the house as Defendant knocked on the victim's door. The victim answered the door, Defendant asked him for a donation, and the victim stepped inside his house to retrieve his wallet. When the victim returned to the front door, Mr. Williamson said that the victim must have seen Defendant's gun. The victim tackled Defendant, and the two men fell off the front porch. Defendant cried out that his knee was hurt. Defendant managed to slide two or three feet away from the victim, pulled out his gun and shot the victim twice, the last time in the head. Mr. Williamson helped Defendant into the car, and the men returned to Mr. Williamson's house.

On cross-examination, Mr. Williamson conceded, in his first two statements to the police, that he denied being at the victim's house when the victim was killed. In his third statement, Mr. Williamson said that he shot the victim. Mr. Williamson said that the police officers told him that his bond would be reduced if he confessed to the murder. Mr. Williamson said that he wore a mask during the killing, but he did not remember that the police had found a mask when they searched his house. Mr. Williamson denied telling defense counsel's investigator that the three men attempted to rob the victim because the victim owed Defendant money from a drug deal. Mr. Williamson said that he entered a plea of guilty to facilitation of felony murder and was sentenced to thirty-six years.

Khary Thompson said that he lent Defendant his Ford Taurus automobile on July 10, 1998, so that Defendant could go to a recreational center to play basketball. Mr. Thompson said that he did not see a white bucket in the car when it was returned to him later that night, nor did he see any blood in the car.

Warren Griffin testified that he drove Mr. Thompson's car to the victim's house because Defendant said he wanted to "holler at someone." Mr. Griffin let Defendant out, and he and Mr. Williamson drove around the block. When they returned to the victim's house, the victim was struggling with Defendant on the grass. Mr. Griffin started to drive away, but Mr. Williamson got out of the car. Mr. Griffin left. He then heard gunshots and drove back to the victim's house where he picked up Mr. Williamson and Defendant. He said that Defendant was "hobbling." Mr. Griffin

said that he did not see a white bucket. Mr. Griffin said that he entered a plea of guilty to facilitation of aggravated robbery as a result of the incident.

Melissa Hansen-Petrik, the victim's next door neighbor, heard dogs barking on the evening of July 10, 1998, and went to her front door to investigate. She heard the victim yelling for help, but her husband's pick-up truck blocked her view into the victim's front yard. Ms. Hansen-Petrik went inside to call 911. She heard gunshots and saw a blue, four-door sedan drive slowly by the victim's house. The blue car returned as Ms. Hansen-Petrik was concluding her emergency call. Two men ran toward the car, with one man limping. Ms. Hansen-Petrik was unable to see the men's faces, but she said that they were not wearing masks.

Kristen Oura, the victim's girlfriend, said that the victim had been in the yard earlier in the evening. He came into the house to take a shower. Ms. Oura said that she noticed the victim's wallet on the dining room table. Ms. Oura was talking on the telephone when the incident occurred and did not hear the gunshots.

Larry Vineyard with the Knoxville Police Department found a white bucket on the victim's front porch, and a baseball cap and the victim's wallet in the front yard. Thomas Evans, a senior evidence technician with the Knoxville Police Department, said that some money was found inside the white bucket, and Defendant's fingerprints were on the outside of the bucket. Officer Evans said that the police were not able to find any shell casings or the gun that fired the fatal shots. On cross-examination, Officer Evans said that there were other sets of fingerprints on the white bucket which were not identified.

Sandra Elkins, the Knox County Medical Examiner, testified that the victim's autopsy revealed scrapes and abrasions on the victim's hands, and an abrasion consistent with a bullet's graze above his right elbow. Dr. Elkins said that the victim was shot once in the neck and once in the top right quadrant of his head. The bullet causing the neck wound exited his body, but the bullet from the head wound lodged in the victim's brain stem, causing death within seconds. There was soot and stipple around the neck bullet wound indicating that the gun had been fired approximately twelve inches away from the victim. Only soot was visible around the head wound indicating that the shooter fired from a range of less than six inches. On cross-examination, Dr. Elkins said that the neck wound would have produced a significant amount of blood, and the shooter would have blood spatter on his clothes.

Defendant testified on his own behalf. He said that Mr. Thompson picked him up from work on July 10, 1998. Defendant said that he noticed a white bucket in the back of Mr. Thompson's car, and he had to push the bucket aside in order to sit down. Defendant dropped Mr. Thompson off at his night job, and then drove Mr. Thompson's car to Mr. Williamson's house. He and Mr. Williamson watched television and played video games. The men decided to play basketball, and Mr. Williamson called a few friends. Mr. Griffin came over, and the men left in Mr. Thompson's car. Defendant said that he drove the car, and Mr. Griffin sat in the back seat holding a black bag.

Defendant said he thought the men were going to pick up a friend of Mr. Williamson's for a basketball game. Mr. Williamson gave Defendant directions to the victim's house. When they arrived, Mr. Williamson told Defendant to go to the front door and see if the victim wanted to play basketball. The victim answered Defendant's knock, and Defendant told him that some of the victim's friends were here to see him. Defendant turned toward the car and saw Mr. Williamson and Mr. Griffin running toward the front porch carrying guns and masks. Defendant said the victim grabbed him and held Defendant in front of himself like a shield. The two men fell off the porch, and Defendant broke his kneecap. Defendant lay on the ground, holding his knee to his chest. The victim ran toward his neighbor's truck yelling for help, and Mr. Williamson fired the first shot. The victim fell to the ground. Mr. Williamson knelt beside the victim and shot him in the head. Defendant and Mr. Williamson got back into Mr. Thompson's car, and the men drove to Mr. Williamson's house. Mr. Williamson called Byron Meek to tell him to return Mr. Thompson's car, and Mr. Meek also took Defendant home so that he could go to the hospital.

Kenneth Bussell, Defendant's father, said that Defendant came home with an injured knee on July 10, 1998. Defendant told Mr. Bussell that he had injured his knee during a basketball game. Mr. Bussell took Defendant to the hospital. He said that Defendant did not have any blood on him.

## II. Sentencing Issues

At the sentencing hearing, the State presented Defendant's pre-sentence report and the testimony of various members of the victim's family concerning the impact of the victim's death on their lives. According to the pre-sentence report, Defendant graduated from high school and attended Hiwassee College on a basketball scholarship for one year. Before his arrest, Defendant was employed as a caregiver by Independent Opportunities and Sunrise Community. Since the trial, Defendant had been employed in his grandfather's wrecking company. Defendant's prior criminal history consists of two 1998 misdemeanor convictions for disorderly conduct and underage drinking.

The trial court found that there was some evidence based on Defendant's prior misdemeanor convictions that he had a previous history of criminal behavior, but accorded this enhancement factor very little weight. *See* Tenn. Code Ann. § 40-34-114(2). The trial court found that enhancement factor (7), the personal injuries inflicted upon the victim were particularly great, was applicable to Defendant's sentence for his attempted robbery conviction but not his sentence for the criminally negligent homicide conviction. *See id.* § 40-35-114(7). Significant weight was placed on the use of a firearm to commit both offenses. *See id.* § 40-35-114(10). The trial court also considered the fact that the attempted robbery offense was committed without hesitation when the risk to human life was high. *See id.* § 40-35-114(11). Based on the presence of these enhancement factors, the trial court sentenced Defendant to two years for his criminally negligent homicide sentence and four years for his attempted robbery sentence.

The trial court also denied Defendant's request for alternative sentencing, stating,

[E]ven though this is a very short period of time, four years at [thirty] percent, in my judgment, even though there's a presumption of probation, I do not believe that probation sends the correct message in this matter. I think that it depreciates the seriousness of the offense, and I think that's the wrong message to you and to everybody else if I were to do that.

The trial court stated to Defendant:

The jury has spoken, [Defendant]. There's nothing I can do about that. So my opinion doesn't matter with regard to your guilt, but my opinion does matter with regard to your sentencing. I think this jury has done you . . . a favor. I mean, I don't know any other way to say it.

When a defendant challenges the length, range, or manner of service of a sentence, this Court conducts a *de novo* review with a presumption that the determinations made by the trial court are correct. *Id.* § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. *Id*. §§ 40-35-102, -103, and -210; *State v. Smith*, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

As a Range I standard offender, Defendant is subject to a sentence of between two and four years for his Class D felony conviction, and between one and two years for his Class E felony conviction. *Id*. §§ 40-35-112(a)(4) and (5). In calculating the sentence for Defendant's convictions, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors. *Id.* § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. *Id.* 40-35-201(d). If both enhancing and mitigating factors are present, the trial court must start at the presumptive minimum, enhance the sentence within the range as appropriate for the enhancing factors, and then reduce the sentence as appropriate for the mitigating factors. Tenn. Code Ann. § 40-35-210(e).

We initially note that Defendant argues that the trial court's determinations both as to the length of his sentences as well as the manner of serving his sentences violate his Sixth Amendment right to trial by jury as outlined in *Blakely v. Washington*, 542 U.S. —, 124 S. Ct. 2531 (2004). Our

Supreme Court, however, has recently determined that *Blakely* does not impact the validity of Tennessee's sentencing scheme. *State v. Edwin Gomez and Jonathan S. Londono*, No. M2002-01209-SC-R11-CD, — S.W.3d —, 2005 WL 856848, at \*22 (Tenn. April 15, 2005), *petition to rehear denied* (Tenn. May 18, 2005). Defendant, thus, is not entitled to relief based on his *Blakely* issues.

A. Length of Sentences

Defendant argues that the trial court misapplied enhancement factors (2) and (10) to both of his sentences, and enhancement factor (7) in determining the length of his attempted robbery sentence. Defendant does not challenge the application of enhancement factor (11) to his attempted robbery sentence. He contends that no weight should have been given to his previous criminal history because his convictions resulted from misdemeanor offenses rather than felonies. *See* Tenn. Code Ann. § 40-35-114(2). Misdemeanor convictions alone may support application of enhancement factor (2). *See, e.g., State v. Richard Warren*, No. M2001-02139-CCA-R3-CD, 2003 WL 354505 (Tenn. Crim. App., at Nashville, Feb. 14, 2003), *no perm. to appeal filed* (the defendant's three prior misdemeanor convictions support application of enhancement factor (2)). We agree, however, with the trial court's assessment that enhancement factor (2) should be given little weight in the sentencing determinations.

Defendant contends that the trial court erred in applying enhancement factor (10) based on a finding that Defendant employed a gun during the commission of the offenses. Defendant argues that the jury's failure to convict Defendant of the greater offenses of attempted especially aggravated robbery and attempted aggravated robbery leads one to the assumption that the jury found that Defendant was not armed during the commission of the offenses. *Compare* Tenn. Code Ann. §§ 39-13-402 and 39-13-403 with 39-13-401. The State argues that Defendant's conviction of the lesser included offense of attempted robbery does not negate the fact that the victim was killed by multiple gunshots.

The trial court found that,

[t]here is no question that a firearm was used. In my mind there's no question [Defendant] was involved in that in an active way, and therefore, I think the possession or employing [sic] of a firearm is an aggravating . . . factor, and I think it's a significant aggravating factor. I place a lot of weight on that.

In its sentencing determinations, the trial court is directed to consider the nature and characteristics of the criminal conduct involved. Tenn. Code Ann. § 40-35-210(b)(4). Enhancement factor (10) requires a finding that the defendant possessed or employed a firearm during the commission of the offense. *See id.* § 40-35-114(10). Although there is contradictory proof as to which man used the firearm, a firearm was undisputedly used during the commission of the crimes. The trial court implicitly found that Defendant used the firearm. The use of a firearm is not an element of either criminally negligent homicide or attempted robbery. *See id.* §§ 39-13-212(a) and

-6-

39-13-401(a). Thus, application of enhancement factor (10) to both of Defendant's sentences was not inappropriate. *See State v. Bobby Joe Strader*, No. E1999-00132-CCA-R3-CD, 1999 WL 1023738, at *4 (Tenn. Crim. App., Knoxville, Nov. 10, 1999), *no perm. to appeal filed.*

Defendant also argues that the trial court improperly considered enhancement factor (7) in determining the length of his sentence for his attempted robbery conviction. Enhancement factor (7) requires a finding that "the personal injuries inflicted upon . . . the victim [were] particularly great." Tenn. Code Ann. § 40-35-114(7). Relying on *State v. Nix*, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995), Defendant argues that enhancement factor (7) is an essential element of the charged offense of attempted especially aggravated robbery and thus cannot be used to enhance Defendant's sentence for his conviction of the lesser included offense of attempted robbery.

We respectfully disagree with Defendant's analysis. Although the indictment charged Defendant with committing the offense of attempted especially aggravated robbery, the indictment also necessarily charged all of the lesser included offenses of attempted especially aggravated robbery. *See* Tenn. R. Crim. P. 31(c). Attempted robbery is a lesser included offense of attempted especially aggravated robbery. *See State v. Richmond*, 90 S.W.3d 648, 660 (Tenn. 2002).

Only two statutory limitations are imposed upon the trial court in determining that factually proven enhancement factors are applicable in determining the length of a defendant's sentence. *State v. Zonge*, 973 S.W.2d 250, 259 (Tenn. Crim. App. 1997). That is, the enhancement factor must be appropriate to the offense of which the defendant is convicted, and, secondly, the enhancement factor must not be an essential element of the offense. Tenn. Code Ann. § 40-35-114. In considering whether an enhancement factor is appropriate to the offense, our Supreme Court has concluded that "a sentencing court may apply an enhancement factor based on facts underlying an offense for which the defendant has been acquitted, so long as the facts have been established in the record by a preponderance of the evidence." *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000). Personal injury to the victim is not an essential element of the offense of attempted robbery. *See* Tenn. Code Ann. §§ 39-12-101 and 39-13-401. Clearly, death is a "particularly great" personal injury. Thus, we conclude that the trial court properly applied enhancement factor (7) to Defendant's sentence for attempted robbery.

In summary, enhancement factors (2), (7), (10) and (11) are applicable to Defendant's sentence for attempted robbery, and enhancement factor (2) and enhancement factor (10) are applicable to his sentence for the criminally negligent homicide conviction. We cannot conclude that the trial court erred in sentencing Defendant to four years for his attempted robbery conviction and two years for his criminally negligent homicide conviction. Defendant is not entitled to relief on this issue.

B. Denial of Alternative Sentencing

Defendant argues that the trial court erred in denying his request for alternative sentencing and argues that none of the considerations relevant to this decision were warranted by the facts and

circumstances surrounding his offenses. Because Defendant does not fall within the class of offenders for whom incarceration is a priority and is a standard offender convicted of a Class D and a Class E felony, Defendant is presumed to be an eligible candidate for alternative sentencing. Tenn. Code Ann. §§ 40-35-102(5) and (6). If the trial court, however, is presented with evidence sufficient to overcome the presumption, then it may sentence a defendant to confinement  *Ashby*, 823 S.W.2d at 169 (Tenn. 1991). Each case is determined on its own facts and circumstances. *State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

Based on the facts and circumstances surrounding Defendant's offenses, the trial court found that confinement was necessary to avoid depreciating the seriousness of the offenses and to serve as a deterrent to both the community and Defendant himself. The trial court also mentioned the leniency extended by the jury in convicting Defendant of the lesser included offenses of the charged offenses.

A trial court may determine if incarceration rather than alternative sentencing is appropriate if the evidence shows that:

(A)     [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)      [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C)     [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . .

Tenn. Code Ann. § 40-35-103(1)(A)-(C). In its determinations, the trial court may also consider the defendant's potential or lack of potential for rehabilitation and any mitigating or enhancement factors that are relevant to sentencing. *Id*. §§ 40-35-103(5), 40-35-210(b)(5); *State v. Boston*, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). A trial court should also "consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of both the defendant and the public" in determining whether to grant or deny probation. *State v. Ring*, 56 S.W.3d 577, 586 (Tenn. Crim. App. 2001) (citations omitted). As noted above, a jury's verdict of acquittal does not prevent the sentencing court from considering a defendant's conduct underlying the acquitted charge if proven by a preponderance of the evidence. *Winfield*, 23 S.W.3d at 282-82 (Tenn. 2000).

Defendant argues that he has many positive attributes which warrant the grant of a probated sentence. His prior criminal history only consists of two misdemeanors for disorderly conduct and underage drinking, and he has been gainfully employed both before and after his trial. The trial court acknowledged these mitigating factors, but found that other considerations outweighed the factors tending to favor the grant of probation.

Defendant contends that the trial court erred in denying probation based on the seriousness of the offense, arguing that the offense was not so shocking or horrifying as to support the trial court's denial of alternative sentencing. If probation is denied based solely on the facts and circumstances surrounding the offense, "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring probation." *State v. Fields*, 40 S.W.3D 435,441 (Tenn. 2000) (quoting *State v. Cleavor*, 691 S.W.2d 541, 543 (Tenn. 1985). In the case *sub judice*, an unarmed victim was lured out of his house in daylight and shot at point blank range in his front yard, with the last gunshot fired execution style into the top of his head. Based on the facts and circumstances surrounding these offenses, we find that the trial court properly considered the seriousness of the crimes in its decision to deny alternative sentencing.

The need to avoid depreciating the seriousness of the crimes, however, was not the only consideration. This Court has previously concluded on numerous occasions that the trial court's determination that the jury acted with exceptional leniency is appropriate in making its findings that a defendant's confinement is necessary. *See State v. Michael Wayne Poe,* No. E2003-00417-CCA-R3-CD (Tenn. Crim. App., at Knoxville, July 19, 2004), *perm. to appeal denied* (Tenn. Dec. 20, 2004); *State v. J.D. Edward Ealey*, No. E1999-00381-CCA-R3-CD, 1999 WL 1034649 (Tenn. Crim. App, at Knoxville, Nov. 15, 1999), *no perm. to appeal filed*; *State v. Samuel Braden*, No. 01C01-9610-CC-00457, 1998 WL 85285 (Tenn. Crim. App., at Nashville, Feb. 18, 1998), *no perm. to appeal filed*.

We acknowledge that the trial court referenced deterrence as a basis for denying alternative sentencing, and that Defendant challenges the appropriateness of this finding. A trial court's decision to impose a sentence of confinement based solely on the need for deterrence will not be disturbed so long as "a reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit certain crimes." *State v. Hooper*, 29 S.W.3d 1, 10 (Tenn. 2000). The trial court in the instant case did not substantiate its finding that deterrence was necessary as outlined in *Hooper*. Nonetheless, based on the need to avoid depreciating the seriousness of the offense, coupled with consideration of the jury's leniency, we find that the trial court did not err in denying Defendant's request for alternative sentencing and imposing a sentence of confinement. Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review of the record, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, JUDGE