IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 7, 2003

## STATE OF TENNESSEE v. CURTIS BUFORD

**Direct Appeal from the Criminal Court for Shelby County**
**No. 01-05754     Joseph B. Dailey, Judge**

_____

**No. W2003-00370-CCA-R3-CD  - Filed March 2, 2004**

_____

The appellant, Curtis Buford, was convicted by a jury in the Shelby County Criminal Court of two counts of aggravated robbery, Class B felonies. Following a sentencing hearing, the trial court sentenced the appellant on each count as a Range II multiple offender to twenty years incarceration in the Tennessee Department of Correction, to be served concurrently. On appeal, the appellant argues that (1) the trial court committed reversible error by not instructing the jury on the lesser-included offenses of aggravated robbery; (2) the multiple convictions for aggravated robbery arising out of a single incident involving a single victim violated double jeopardy principles; and (3) the evidence was insufficient to sustain the appellant's convictions for aggravated robbery. Upon review of the record and the parties' briefs, we conclude that the trial court's failure to charge the jury on the lesser-included offenses of aggravated robbery was error. However, we conclude that the error was harmless beyond a reasonable doubt. We also conclude that the evidence was sufficient to sustain a conviction for aggravated robbery. Additionally, we conclude that the appellant's dual convictions for aggravated robbery violated the principles of double jeopardy. Accordingly, we merge the aggravated robbery convictions into a single conviction and remand to the trial court for the correction of the judgments to reflect the merger of the convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Modified and Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Robert Wilson Jones, District Public Defender, and Tony N. Brayton, Assistant Public Defender (on appeal), and Donna Armstard, Assistant Public Defender (at trial), for the appellant, Curtis Buford.

Paul G. Summers, Attorney General and Reporter; Braden H. Boucek, Assistant Attorney General; William L. Gibbons, District Attorney General; and Steve Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

On October 8, 2000, in the early morning hours, Memphis Police Officer David Payment responded to a robbery call at 3211 Ridgecrest in Memphis. When he arrived at the house, he observed a red pickup truck in the driveway with "what appeared to be a bullet hole coming out of the roof" and "a pistol lying on the passenger's seat." After interviewing the residents, Officer Payment took the black nine-millimeter automatic pistol and its magazine into evidence. At trial, Officer Payment reviewed photographs of the pickup truck and identified the bullet hole located in the truck's roof.

At trial, Maxine Goodwin, the victim's wife, testified that her husband died on August 22, 2001, nearly a year after the robbery. He suffered cardiac arrest while mowing a neighbor's lawn.

Mrs. Goodwin testified that at approximately 3:00 a.m. on October 8, 2000, her husband came into their bedroom, woke her, and told her that "he had been carjacked and robbed." Mrs. Goodwin immediately told the victim to call the police and, while the victim placed the call, she woke her son. They went into the family room, and the victim described the details of the robbery. Mrs. Goodwin described the victim as "very anxious, pacing . . . hyper as anyone would be who had experienced something like that . . . ."

At trial, Mrs. Goodwin recounted the events as told by the victim, stating,

> He was at [Vic's] lounge, and there was a gentleman there who he did not know by name but had seen him previously, and the gentleman asked him for a ride, and he gave him a ride. And while they were in the [truck], the gentleman directed him to go somewhere because my husband didn't know where the gentleman lived, . . . and he said he wanted his money. My husband told him that he did not have any money; that all he had was $20. . . . [However,] the gentleman stated that he had more, had him park the truck, rummaged through everything in our truck, and . . . a chest or whatever those things are on the back of the truck, and he went through that stuff as well.

When the man, later identified as the appellant, did not find anything in the truck, he ordered the victim back into the truck, pointed a gun at the victim, and instructed the victim to drive onto the expressway. Mrs. Goodwin testified that the victim told her that he exceeded the speed limit, hoping to be stopped by police. However, the appellant told the victim that if he alerted the police, he would shoot him. Thereafter, the appellant ordered the victim to take the Norris Road exit. Mrs. Goodwin testified, "[A]t that point, my husband said to himself . . . , 'If I'm going to die, I'm going to die the way I want to.'" The victim then stepped on the brake and "tussled" with the appellant. During the

altercation, the gun discharged, and the bullet exited through the roof of the truck. Mrs. Goodwin testified that the victim's lip was swollen as a result of being struck in the mouth during the altercation. The victim also told her that the appellant had a gun when he demanded the money.

Mrs. Goodwin said that during their ten-year marriage, the victim had never owned or carried a gun other than a BB gun. However, after the robbery, the victim purchased a gun and obtained a gun permit. At trial, Mrs. Goodwin identified the following items: the gun found in the victim's truck following the offense, the victim's gun permit displaying a photograph of the victim, and a photograph of the bullet hole located in the roof of the truck. Mrs. Goodwin also identified her husband's voice on an audio recording of the preliminary hearing at which he testified.

On cross-examination, Mrs. Goodwin acknowledged that she was familiar with Vic's Lounge, having patronized the lounge with the victim on several occasions. Mrs. Goodwin stated that occasionally a metal detector was located at the entrance to the lounge, but "[n]ot always." Mrs. Goodwin admitted that initially the victim did not know the alleged robber's name, so he contacted a friend who knew the man. Thereafter, the victim informed the police of the man's name. Mrs. Goodwin also conceded that it was possible that her husband had a gun without her knowledge, elaborating, "Anything is possible." However, she noted that after the alleged robbery, "[the victim] went through the proper procedures to purchase and [obtain] the permit to have a gun."

Sergeant William Woodward of the Memphis Police Department testified that in October 2000, he was assigned to investigate a robbery involving the appellant. On the morning following the alleged robbery, Sergeant Woodward met with the victim. As a result, the appellant was identified as a suspect. Sergeant Woodward prepared a photographic lineup, which he presented to the victim. Thereafter, Sergeant Woodward obtained a warrant for the appellant's arrest. The appellant was subsequently arrested and taken to the robbery squad office for questioning.

Initially, Sergeant Woodward and Detective Pierce interviewed the appellant. After waiving his rights, the appellant indicated that he did not know the victim, did not possess a gun, and had not been to Vic's Lounge. Because Sergeant Woodward "wasn't getting anywhere," he asked another officer, Sergeant Tim Green, to interview the appellant. After Sergeant Green interviewed the appellant, Sergeant Woodward "[w]ent back and talked to the [appellant] one more time." The appellant then admitted that he had been at Vic's Lounge with the victim and that he had asked the victim for a ride home. However, the appellant claimed that during the ride home, the victim attempted to rob him. Sergeant Woodward asked the appellant to put his statement in writing, but the appellant refused.

Tim Green, a sergeant with the Memphis Police Department's Robbery Squad, testified that in October 2000, Sergeant Woodward asked him to interview the appellant "for awhile to see if he would give any information . . . ." Thereafter, Sergeant Green and Detective Pierce interviewed the appellant. During the interview, the appellant admitted that he was at Vic's Lounge on the night of the alleged robbery. The appellant claimed that he showed the victim a gun, but did not rob him. Sergeant Green relayed this information to Sergeant Woodward.

Assistant District Attorney Tim Beacham testified that in December 2000, he represented the State at the appellant's preliminary hearing at which the victim testified. Beacham made an audio recording of the hearing, including the victim's testimony. A separate recording of the victim's testimony was copied from the original and transcribed. Prior to testifying at trial, Beacham listened to the original audio recording of the preliminary hearing and the separate recording of the victim's testimony. He identified the voices on the recordings as those of the parties involved in the hearing. Thereafter, the recording of the victim's testimony was played for the jury.

The victim's testimony at the preliminary hearing mirrored his wife's testimony at trial. The victim identified the appellant as the man who robbed him on October 8, 2000. The victim testified that he was at Vic's Lounge having a drink when the appellant entered the lounge. Later, he and the appellant shared a "40-ounce" beer. Afterward, the appellant asked the victim to drive him to his house in the Greenlawn area. During the drive, the appellant asked the victim to stop the truck. The appellant then pointed a black nine-millimeter pistol at the victim and said, "Give me your money." The victim looked at the appellant in disbelief, stating, "[M]an, you gotta be kidding." The appellant responded, "I'm not playing with [you], I'll kill you, don't make me kill you."

The victim gave the appellant his money, but the appellant was not satisfied. The appellant ordered the victim to empty his pockets, and the victim complied. The appellant then rummaged through the glove compartment of the truck and told the victim to open the toolbox in the back of the truck. After searching the toolbox, the appellant ordered the victim to get back into the truck and drive to "the Southside."

Following the appellant's instructions, the victim drove onto Interstate 40. The appellant advised the victim that if he alerted the police he would be shot. Next, the appellant ordered the victim to take the Norris Road exit. As the victim turned onto Norris Road, he thought, "I'm not going out this way; I'm going to go out my way or no way." The victim then stepped on the brakes and reached for the pistol. He and the appellant "tussle[d]," and the pistol discharged, shooting a hole in the roof of the pickup truck. During the struggle, the victim took the pistol from the appellant, pulled him from the truck, and told him "to give me my stuff back." The appellant returned the victim's wallet and credit cards, but kept twenty-one dollars ($21) in cash. After returning the victim's property, the appellant walked away.

The victim immediately drove home and called the police. When the police arrived, he gave them the pistol he had taken from the appellant. He also provided a statement to the officers. The victim testified at the preliminary hearing that he had not seen the appellant since the night of the robbery.

Mary L. Buford, the appellant's wife, was the sole witness to testify on behalf of the appellant. She stated that prior to 1999, she had been to Vic's Lounge "[a]bout four or five times or more." She had not been there "after 1999." Mrs. Buford claimed that a metal detector was located at the entrance of the lounge. She testified that when she was there, the metal detector was

"always in place." She explained that if the detector "[went] off," the patron was then scanned with a handheld scanner.

Based on the foregoing testimony, the jury convicted the appellant of two counts of aggravated robbery. Following a sentencing hearing, the trial court sentenced the appellant on each count as a Range II multiple offender to twenty years incarceration, to be served concurrently. The appellant now appeals, asserting that (1) the trial court committed reversible error by not instructing the jury on the lesser-included offenses of aggravated robbery; (2) the multiple convictions for aggravated robbery arising out of a single incident involving a single victim violated double jeopardy principles; and (3) the evidence was insufficient to sustain the appellant's convictions for aggravated robbery.

## II. Analysis

### A. Lesser-Included Offenses

Whether an offense should be submitted to the jury as a lesser-included offense is a mixed question of law and fact. State v. Marcum, 109 S.W.3d 300, 302 (Tenn. 2003) (citing State v. Rush, 50 S.W.3d 424, 427 (Tenn. 2001)). Mixed questions of law and fact are reviewed de novo with no presumption of correctness. Id.

In 2001, the legislature amended Tennessee Code Annotated section 40-18-110, with the amendments to govern all trials conducted on or after January 1, 2002. Because the appellant's trial occurred in November 2002, the amended statute is controlling in the instant case. Tennessee Code Annotated section 40-18-110(a) (2003) provides:

> When requested by a party in writing prior to the trial judge's instructions to the jury in a criminal case, the trial judge shall instruct the jury as to the law of each offense specifically identified in the request that is a lesser included offense of the offense charged in the indictment or presentment.

Failure to submit a written request for a lesser-included offense results in a waiver of the instruction and will not provide a ground for relief in either a motion for new trial or on appeal. Tenn. Code Ann. § 40-18-110(c). In the absence of a request, the trial court may charge the jury on a particular lesser-included offense, but no party is entitled to any such charge. Tenn. Code Ann. § 40-18-110(b).

In the instant case, the trial court initially stated that it intended to charge the jury on simple robbery as a lesser-included offense of aggravated robbery. The appellant then made an oral request for an instruction on theft of property and submitted a written request for instructions on attempted aggravated robbery, attempted robbery, and attempted theft of property. After considering the evidence and discussing the issue at great length with the parties, the trial court denied the

appellant's requests, refusing to instruct the jury as to any lesser-included offenses of aggravated robbery.[1]

As noted, the appellant did not request in writing that the trial court instruct the jury on the lesser-included offenses of robbery and theft of property. However, in the instant case, we cannot read section 40-18-110 to preclude the appellant's oral requests, even though the appellant failed to file a written request for the instructions on robbery and theft. The appellant requested the instruction on theft of property upon learning that the trial court was not going instruct the jury on the offense, but prior to the trial court's charge to the jury. Accordingly, in addition to the attempt offenses requested by the appellant in writing, we will address the trial court's failure to charge robbery and theft of property as lesser-included offenses.

Again, the appellant challenges the trial court's failure to charge robbery, theft of property, attempted aggravated robbery, attempted robbery, and attempted theft of property as lesser-included offenses of aggravated robbery. On appeal, the State concedes that the trial court erred by not charging these lesser-included offenses, but asserts that the error was harmless beyond a reasonable doubt. We agree.

Under the test adopted in State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999), an offense is a lesser-included offense if:

---

[1] As noted, following a lengthy discussion, the trial court refused to charge any lesser-included offenses of aggravated robbery. The trial court, throughout more than twenty pages of the transcript, noted its dissatisfaction and disagreement with "all this sham that's coming down [from the appellate courts] with regard to lesser-included offenses these days." The trial court stated,

> [W]e're not in the business, or we shouldn't be in the business, and it's an outrage if our appellate courts are now in the business of providing juries with lesser offenses that do not exist in the proof simply for the purpose of allowing them to compromise or to reach a jury-nullification verdict. That is an outrage if that's what the appellate courts are heading toward and if that's where we are.

Our supreme court has repeatedly emphasized that all lesser-included offenses must be charged as set forth in State v. Burns, 6 S.W.3d 453 (Tenn. 1999). This court has previously advised the trial court that our supreme court

> is a direct creature of the Constitution and constitutes the supreme judicial tribunal of the state and is a court of last resort. All other courts are constitutionally inferior tribunals subject to the actions of the [s]upreme [c]ourt. Its adjudications are final and conclusive upon all questions determined by it, subject only to review, in appropriate cases by the Supreme Court of the United States. *The Shelby County Criminal Court, as is this [c]ourt, is bound by the rulings of the Tennessee Supreme Court.*

State v. Walter Wilson, No. W2003-02344-CCA-R10-CO, slip op. at 7 (Tenn. Crim. App. at Jackson, Oct. 6, 2003) (emphasis added) (citations omitted).

(a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

(1) a different mental state indicating a lesser kind of culpability; and/or

(2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Because the elements of robbery and theft of property are included in the definition of aggravated robbery, our supreme court has previously held that these offenses are lesser-included offenses of aggravated robbery under part (a) of the Burns test. State v. Allen, 69 S.W.3d 181, 187 (Tenn. 2002); State v. Bowles, 52 S.W.3d 69, 79 (Tenn. 2001). Moreover, the attempt to commit aggravated robbery, robbery, and theft of property are lesser-included offenses under part (c)(2) of the Burns test.

However, the trial court is not required to instruct the jury on all lesser-included offenses. To determine whether the evidence justifies a jury instruction on a lesser-included offense, the trial court must employ the following two-step process adopted by our supreme court in Burns, 6 S.W.3d at 469, and incorporated into Tennessee Code Annotated section 40-18-110(a) (2003). First, the trial court must determine whether "the record contains any evidence which reasonable minds could accept as to the lesser included offense." Tenn. Code Ann. § 40-18-110(a). "In making this determination, the trial judge shall view the evidence liberally in the light most favorable to the existence of the lesser included offense without making any judgment on the credibility of such evidence." Id. Second, the trial court "shall . . . determine whether the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser included offense." Id.; see also Burns, 6 S.W.3d at 469.

Our supreme court has previously stated that, as a general rule,

[e]vidence sufficient to warrant an instruction on the greater offense also will support an instruction on a lesser offense under part (a) of the Burns test. In proving the greater offense the State necessarily has

-7-

> proven the lesser offense because all of the statutory elements of the
> lesser offense are included in the greater.

State v. Richmond, 90 S.W.3d 648, 660 (Tenn. 2000) (quoting Allen, 69 S.W.3d at 188). However, the general rule for lesser-included offenses under part (a) of the Burns test does not extend to lesser-included offenses under part (c). Id. at 662. "Establishing proof sufficient to convict under the greater offense will not necessarily prove the lesser offenses . . . enumerated in part (c) of the test." Id. "[P]art (c) of the Burns test, which makes an attempt a lesser-included offense, applies 'to situations in which a defendant attempts to commit . . . either the crime charged or a lesser-included offense, but no proof exists of the completion of the crime.'" Marcum, 109 S.W.3d at 303 (quoting State v. Ely, 48 S.W.3d 710, 719 (Tenn. 2001)). In other words, an instruction on a lesser-included offense under part (c)(2) of the Burns test is not warranted unless a reasonable juror could have found that the appellant was guilty of attempt as opposed to the completed crime. Id. at 304.

In the instant case, we conclude that the evidence was sufficient to warrant an instruction on robbery and theft, the lesser-included offenses under part (a) of the Burns test. Richmond, 90 S.W.3d at 660; see also State v. Oscar Reynolds, No. W2002-01201-CCA-R3-CD, 2003 WL 21338969, at *2 (Tenn. Crim. App. at Jackson, June 6, 2003), perm. to appeal denied (Tenn. Nov. 3, 2003). Moreover, we conclude that the evidence justified an instruction on attempt. Accordingly, the trial court erred in failing to instruct the jury on the lesser-included offenses of robbery, theft, and attempt.

A defendant's right to an instruction on a lesser-included offense is protected under Article I, section 6 of the Tennessee Constitution. State v. Ely, 48 S.W.3d 710, 727 (Tenn. 2001). Our supreme court has previously held that the failure to instruct the jury on lesser-included offenses will merit reversal unless the State proves beyond a reasonable doubt that the outcome of the trial was not affected. Id. "[T]he failure to instruct on a lesser-included offense is harmless beyond a reasonable doubt when the 'omitted element is uncontested and supported by overwhelming and uncontroverted evidence.'" Richmond, 90 S.W.3d at 661 (quoting Allen, 69 S.W.3d at 189).

Based upon our review of the evidence, we conclude that the trial court's failure to instruct the jury on the lesser-included offenses of robbery and theft constituted harmless error. In the instant case, the State relied upon the use of a deadly weapon to prove that the robbery was aggravated. See Tenn. Code Ann. § 39-13-402(a)(1) (1997). The appellant presented no evidence contesting this fact. The testimony of the appellant's wife related to the fact that in 1999 a metal detector was located at the entrance to Vic's lounge and the metal detector would have sounded if someone entered the lounge with a weapon. She did not testify regarding the offenses or whether a weapon had been used.

Additionally, the appellant's statements to the police did not contest that a deadly weapon was used during the robbery. Initially, the appellant denied any involvement in the robbery, claiming that he did not know the victim, did not own a gun, and had not been at Vic's Lounge. However, the appellant subsequently admitted that he and the victim were at Vic's Lounge on the night of the

robbery, and that he showed the victim a handgun. He also claimed that he did not rob the victim. In his final version of events, the appellant claimed that he accepted a ride home with the victim, and the victim attempted to rob him.

According to the victim's preliminary hearing testimony and the testimony of the victim's wife at trial, the appellant pointed a pistol at the victim during the robbery. The pistol discharged into the roof of the victim's truck when the victim wrested the weapon from the appellant. Officer Payment testified that when he arrived at the victim's house, he observed the victim's pickup truck in the driveway with a bullet hole in the roof and a pistol on the passenger's seat. The black nine-millimeter pistol, which Officer Payment took into evidence, was presented to the jury at trial. Moreover, the jury was shown photographs of the bullet hole in truck's roof and the pistol on the seat. In sum, the proof was overwhelming that a weapon was used in the commission of the robbery. The jury obviously did not believe that the victim, not the appellant, possessed the gun. Accordingly, the trial court's failure to charge the jury on the offenses of robbery and theft was harmless beyond a reasonable doubt.

We also conclude that the trial court's failure to charge attempt as a lesser-included offense was harmless beyond a reasonable doubt. The appellant asserts that "there was evidence from which the jury could have reasonably concluded that [the] robbery failed and that at most [the appellant] was guilty of an attempt." On appeal, the appellant claims that the victim testified that "he ultimately retained all of his property and he also had the weapon." However, as the State correctly notes, the victim testified that he wrestled the pistol from the appellant and ordered the appellant to return the stolen items. Thereafter, the appellant returned the victim's wallet and credit cards, but retained the victim's money. Regardless, we conclude that the failure to charge the jury on attempt was harmless beyond a reasonable doubt.

The testimony of the victim's wife at trial and the victim's preliminary hearing testimony introduced at trial established that the appellant displayed a pistol and took twenty-one dollars ($21) from the victim. The officers who interviewed the appellant testified that the appellant gave three different statements, none of which alleged his involvement in the offense. This issue is without merit.

### B. Double Jeopardy

Next, the appellant contends, and the State concedes, that double jeopardy precludes the dual convictions of aggravated robbery where the convictions were based upon a single act committed against a single victim. We agree.

The double jeopardy clauses of both the United States and the Tennessee Constitutions provide that no one shall be twice put in jeopardy of life or limb for the same offense. U.S. Const. amend. V; Tenn. Const. art. I, § 10. The constitutional right against double jeopardy protects against (1) a second prosecution for the same offense after an acquittal; (2) a second prosecution for the same offense after a conviction; and (3) multiple punishments for the same offense. State v.

Beauregard, 32 S.W.3d 681, 682 (Tenn. 2000); see also State v. Conway, 77 S.W.3d 213, 217-18 (Tenn. Crim. App. 2001).

In the instant case, the State indicted the appellant under the alternative theories of aggravated robbery, charging the appellant in count one with committing aggravated robbery by violence and in count two with committing aggravated robbery by placing the victim in fear. See Tenn. Code Ann. § 39-13-401(a), -402(a) (1997). The jury convicted the appellant under both theories. Thereafter, a judgment of conviction was entered on each count, providing that the sentences for each conviction were to be served concurrently. Our review of the record reflects that the evidence supports only one offense of aggravated robbery. Accordingly, the dual convictions violate the principles of double jeopardy and should be merged into a single conviction of aggravated robbery.

## C. Sufficiency of the Evidence

Finally, the appellant challenges the sufficiency of the evidence to sustain his convictions for aggravated robbery. Specifically, the appellant asserts that the

> convictions [were] based upon the tape-recorded testimony of the alleged victim and the hearsay testimony of the victim's wife. The jury was not able to view and therefore fairly judge the credibility of the primary witness against [the appellant]. Additionally, there was no physical evidence linking [the appellant] to this crime.

The State maintains that a rational jury could conclude that the appellant was guilty of aggravated robbery.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the jury as trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Aggravated robbery is defined in pertinent part as robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1). Robbery is "the intentional or knowing

theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a).

Taken in the light most favorable to the State, the evidence at trial established that the victim agreed to give the appellant a ride home from Vic's Lounge. After driving a few blocks, the appellant ordered the victim to stop the truck, pointed a nine-millimeter pistol at the victim, and demanded his money. The appellant robbed the victim of twenty-one dollars ($21). We conclude that this evidence was sufficient to sustain a conviction for aggravated robbery.

### III.  Conclusion

In summary, we conclude that the trial court's failure to charge the jury on the lesser-included offenses of robbery, theft, and attempt was error. However, we conclude that the error was harmless beyond a reasonable doubt. We also conclude that the evidence was sufficient to sustain the appellant's conviction for aggravated robbery. Additionally, we conclude that the appellant's dual convictions for aggravated robbery violate the principles of double jeopardy, and the convictions should be merged into a single conviction. Accordingly, we remand to the trial court for the correction of the judgments to reflect the merger of the aggravated robbery convictions.

_____
NORMA McGEE OGLE, JUDGE