IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 14, 2018 Session

**STATE OF TENNESSEE v. LANCE LOVELESS**

**Appeal from the Circuit Court for Humphreys County**
**No. 13040     Larry J. Wallace, Judge**

_____

**No. M2017-02048-CCA-R3-CD**

_____

A Humphreys County grand jury charged the defendant, Lance Loveless, with theft of property between $1000.00 and $10,000.00.  Following trial, a jury found the defendant guilty of the lesser-included offense of attempted theft of property between $1000.00 and $10,000.00.  On appeal, the defendant contends:  the State failed to prove attempt, so the proof was insufficient to support the guilty verdict, and the trial court erred when denying his request for judicial diversion.  Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

Terry J. Leonard, Camden, Tennessee, for the appellant, Lance Loveless.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Ray Crouch, District Attorney General; and Joseph L. Hornick, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

In September of 2012, the defendant was the mayor of the City of New Johnsonville, Tennessee.  While searching eBay, the defendant found a yellow Ford Lightning truck for sale in Columbia, South Carolina that he wished to purchase for personal use.  After reaching an agreement as to the sale of the truck, the defendant asked Rich Kent, Director of Public Works for the City of New Johnsonville, to drive to South

Carolina, pick up the truck, and bring it back to New Johnsonville. Mr. Kent was to use his personal Dodge Dakota truck for the trip. Mr. Kent agreed, so the defendant withdrew $6000.00 from the bank. Mr. Kent was to pay $5600.00 for the truck and keep the remaining $400.00 for himself. The defendant intended for trip-related expenses, like gas, to be taken from the $400.00. According to the defendant, Mr. Kent was to leave on Friday, September 7, 2012. The defendant assumed Mr. Kent would take time off work to make the trip, as he had asked Mr. Kent to assist with personal errands in the past, and Mr. Kent had always done so outside of regular work hours.

Mr. Kent left for South Carolina around 6:00 a.m. on September 6, 2012, and brought his brother, Jamie Kent, with him. Mr. Kent said the defendant was aware that Jamie Kent accompanied him to South Carolina, but the defendant denied knowledge. At the defendant's direction, Mr. Kent picked up a trailer from Bill Principi, a friend of the defendant's, prior to leaving New Johnsonville. When leaving Mr. Principi's car lot, Mr. Kent's truck began making noises. Mr. Kent no longer felt comfortable driving his truck to South Carolina, so he instead drove a 2003 Dodge Ram truck owned by the City of New Johnsonville. Mr. Kent maintained that prior to leaving for South Carolina, he told the defendant about his decision to drive the city-owned truck. The defendant vehemently denied this. Because he was driving a truck owned by the City of New Johnsonville, Mr. Kent used a city gas card to pay for gas two times, once in Dandridge, Tennessee and again in Roebuck, South Carolina. Mr. Kent never asked the defendant for permission to use the gas card, and the defendant denied knowing at the time of the trip that Mr. Kent used it.

As planned, Mr. Kent met with the owner of the yellow Ford Lightning truck at a National Guard armory in Columbia, South Carolina. When looking at the truck in person, Mr. Kent noted a small amount of body damage so he called the defendant. The defendant asked Mr. Kent to negotiate a lower price and informed him he could keep any excess money remaining after the negotiation. The owner agreed to sell the truck for $5200.00 instead of $5600.00, so Mr. Kent kept an additional $400.00, making a total of $800.00 for the trip.

Mr. Kent and his brother attached the yellow Ford Lightning truck to the trailer and began the trip back to New Johnsonville. Early the morning of September 7, 2012, the engine in the city's truck "blew up," leaving Mr. Kent and his brother stranded in Unicoi County, Tennessee. Mr. Kent called the defendant at home, and Cynthia Loveless, the defendant's wife, answered the phone. Mrs. Loveless placed the phone on speaker so Mr. Kent could speak with her husband. According to the defendant, during this phone conversation, he learned for the first time that Mr. Kent drove a truck owned by the City of New Johnsonville to South Carolina. The defendant informed Mr. Kent he

would call a tow truck, so Mr. Kent and his brother waited on the side of the road for assistance to arrive.

The defendant found a number for a wrecking service in the area and called Kelly Sue Kent, Mr. Kent's wife and the city recorder for the City of New Johnsonville. As city recorder, Mrs. Kent was the only person authorized to use the City of New Johnsonville's debit card. The defendant gave Mrs. Kent the number for the wrecking service and asked her to use the City of New Johnsonville's debit card to pay for the tow. Mrs. Kent followed the defendant's instructions. Mrs. Kent called Cedar Bluff Towing in Knoxville, Tennessee and asked to have the city's truck and attached twenty-foot trailer holding the defendant's personal truck towed to Bob Frensley Dodge in Madison, Tennessee. The total cost for the tow was $990.00.

Mr. Kent and his brother waited several hours for the tow truck to arrive. Once it did, the men got inside the cab of the tow truck. After arriving at Bob Frensley Dodge, Mr. Kent drove the defendant's yellow Ford Lightning truck back to New Johnsonville.

Mr. Kent submitted time cards to the City of New Johnsonville for eight hours of work on September 6, 2012, and eight hours of work on September 7, 2012. He additionally submitted time cards for his brother, a contract worker for the City of New Johnsonville, reflecting ten hours of work on September 6, 2012, and ten hours of work on September 7, 2012. As city recorder, Mrs. Kent also processed time cards and issued paychecks. Mrs. Kent thought her husband was using "comp time" for the trip, even though his time card did not designate such. At the time of trial, Mrs. Kent had no way to go back into the system to see if she deducted "comp time" from Mr. Kent's leave bank and did not recollect doing so. As for the time card submitted on behalf of Jamie Kent, Mrs. Kent understood Jamie Kent lumped all the hours he worked that week together and submitted them as hours worked on September 6 and 7 instead of the days he actually worked. Mr. Kent was compensated $303.00 by the City of New Johnsonville for the time he allegedly spent working on September 6 and 7, 2012, and his brother was compensated $247.00 by the City of New Johnsonville for the time he allegedly spent working on September 6 and 7, 2012.

The engine in the city-owned pickup truck cost $5500.00 to replace and required city council approval. As city recorder, Mrs. Kent typed all city ordinances, so she drafted an ordinance stating:

**AN ORDINANCE AUTHORIZING THE EMERGENCY REPAIR OF A 2003 DODGE RAM FOR THE PUBLIC WORKS DEPARTMENT**

**WHEREAS,** The City of New Johnsonville recently purchased a 2003 Dodge Ram truck from the Tennessee State Surplus Program with public auction proceeds for the use of the Public Works Department; and

**WHEREAS,** The engine of this truck malfunctioned and locked up requiring a new engine.

**NOW, THEREFORE, BE IT ORDAINED** by the City Council of the City of New Johnsonville, Tennessee that:

Section 1.    The truck was towed to the nearest Dodge dealer, Bob Frensley Dodge in Madison, Tennessee who determined the engine was blown.

Section 2.    Upon checking the cost of replacement engines at other Dodge dealers in both Paris and Clarksville, Tennessee, this dealer's cost was the lowest at [f]ive thousand five hundred dollars ($5,500.00) for a new engine with both installation and a 3 year/100,000 mile warranty.

Section 3.    Due to the need for the use of this truck and storage fees to be incurred at the Dodge dealership, it was determined it [wa]s in the best interest of the City to have it repaired immediately rather than wait to obtain formal bids pursuant to Section 4.07 on Centralized Purchasing in the City Charter.

Section 4.    The City council hereby affirmatively finds this current situation allows for the waiver of the requirement to obtain formal bids.

Section 5.    This ordinance shall become effective upon its second and final reading, the public welfare requiring it.

Mrs. Kent admitted she sometimes drafted basic ordinances on her own but remembered this ordinance being drafted at the request of the defendant. The defendant denied instructing Mrs. Kent to be intentionally vague when drafting the ordinance. Both Mrs. Kent and the defendant admitted there were closer Dodge dealerships to New Johnsonville than Bob Frensley Dodge.

After two readings, the city council unanimously approved the ordinance, and the defendant signed off on it as mayor. Council members Timothy Daniel and Nathan Woods testified that at the time they voted on the ordinances, the city council members

did not know the circumstances surrounding the replacement of the engine. Both Mr. Daniel and Mr. Woods thought Mr. Kent drove the city-owned truck to Columbia, South Carolina for the purpose of picking up surplus military equipment to be used by New Johnsonville's Department of Public Works and denied receiving a phone call from the defendant early the morning of September 7, 2012, regarding Mr. Kent's use of the city-owned truck for the purpose of hauling the defendant's personal truck. Mr. Woods stated he would not have approved the repair costs had he known the circumstances under which the truck's engine broke down.

Approximately two years later, a local news station aired an investigative story on the defendant's personal use of the City of New Johnsonville's resources for the purpose of picking up the Ford Lightening truck in Columbia, South Carolina and the subsequently incurred tow and engine repair expenses. The defendant claimed that after the news story aired, he learned for the first time that Mr. Kent had not used vacation days when making the trip to South Carolina, so he deducted two vacation days from Mr. Kent's leave bank. The defendant further reimbursed the City of New Johnsonville approximately $1182.00, the cost of the tow and fuel. The defendant did not reimburse the city for the cost of the new engine because he felt that expense was Mr. Kent's problem.

As a result of the news story, Phillip Job, an investigator for the Tennessee Comptroller of the Treasury's Office, investigated the allegations by reviewing bank records, invoices, time cards, leave records, and the minutes of city council meetings. Bank records confirmed the City of New Johnsonville paid $990.00 to Cedar Bluff Towing and $5500.00 to Bob Frensley Dodge. Mr. Job also conducted three interviews of the defendant. Though the defendant's story changed slightly each time, from the interviews Mr. Job ascertained: two employees of the City of New Johnsonville used a city-owned truck to retrieve a truck from South Carolina that had been purchased by the defendant for his personal use; both employees were paid by the City of New Johnsonville for the two-day trip; the men used a city-funded gas card to purchase fuel during the trip; the city-owned truck broke down during the course of the trip; the defendant ordered the city recorder to pay the tow bill using the city debit card; the defendant purposefully hid the circumstances under which the truck broke down from the full city council by drafting a vague ordinance that approved the cost of engine replacement; the defendant repaid the cost of the tow and the fuel only after a local news station aired the story almost two years later; and after the news story aired, the defendant took two days of vacation away from Mr. Kent.

At trial, the State called Mr. Job, Mr. Kent, Mrs. Kent, Mr. Daniel, and Mr. Woods to testify, all of whom testified consistently with the foregoing. The defendant then elected to testify on his own behalf. When doing so, he indicated Mr. Kent had

conducted personal errands for him in the past. The defendant always paid Mr. Kent from his personal funds, and Mr. Kent performed the work outside of his regular office hours. For this reason, when Mr. Kent agreed to pick up the truck in Columbia, South Carolina, the defendant assumed Mr. Kent would use vacation days when taking the trip. The defendant also thought Mr. Kent would drive his personal truck and denied being told prior to the trip that due to truck trouble, Mr. Kent planned to drive a city-owned vehicle instead. According to the defendant, "I would never have told Rich Kent to take a city vehicle. That's something I would be 100% against. It's wrong. That's why I went out and asked Bill Dale Principi if I could use his trailer." The defendant further denied approving the use of a city-funded gas card during the trip.

According to the defendant, he never learned Mr. Kent had taken the city-owned truck to South Carolina until it broke down in Unicoi County. At that point, the defendant did not know what to do, so he called council members Mr. Daniel and Mr. Woods, as he always called them prior to making important city decisions. Mr. Woods said, "That's a personal issue. You're the mayor; you need to handle that." He then called Mrs. Kent and asked her to pay the tow company using the city's debit card.

The defendant did not initially reimburse the City of New Johnsonville for the tow and gas expenses because this was a personal issue he had with Mr. Kent, and he did not think it would become problematic so long as it did not occur again. Once the news story aired, the defendant paid the tow and gas charges to protect Mr. Kent, as he did not want him to get fired. The defendant denied telling council members Mr. Kent had been using the truck to pick up military equipment but agreed they probably assumed Mr. Kent had been using the truck for city purposes at the time the engine quit working.

The defendant's wife, Cynthia Loveless, also testified on his behalf. Mrs. Loveless confirmed Mr. Kent called their home around 2:30 a.m. on September 7, 2012, and stated, "Put [the defendant] on the phone. I need to talk to him. Wake him up, wake him up." Mrs. Loveless put the phone on speaker and heard Mr. Kent say, "I'm in a city truck." In response, the defendant said, "What? What are you doing in a city truck?" Mrs. Loveless did not hear the entire conversation, but her husband appeared upset by Mr. Kent's use of the city's truck.

The jury found the defendant guilty of attempted theft of an amount between $1000.00 and $10,000.00, a Class E felony. The defendant subsequently filed a motion for judicial diversion. After considering the presentence report, the arguments of the parties, and the pertinent mitigating and enhancement factors, the trial court imposed a within-range, probated sentence of one year and denied the defendant's motion for judicial diversion. When denying diversion, the trial court found the defendant's actions and statements indicated he failed to take responsibility for his actions and was, instead

"sorry he got caught." Further, the circumstances of the case showed the defendant abused a position of public trust, and the grant of diversion would not serve to deter other public officials from misusing taxpayer money in a similar manner or serve the best interests of the public. The trial court additionally ordered the defendant to pay restitution in the amount of $5500.00, the cost of replacing the engine, within the probationary period.

The defendant filed a timely motion and amended motion for new trial that included arguments that the evidence was insufficient to support the jury's verdict and that the trial court erred when denying his request for judicial diversion. The trial court denied the motion, and this timely appeal followed.

*Analysis*

## I. Sufficiency

On appeal, the defendant first argues the evidence was insufficient to support his conviction for attempted theft because the State failed to present evidence of attempt. The State counters that the evidence was sufficient for a rational juror to find, beyond a reasonable doubt, the defendant completed a theft, so it was sufficient for a rational juror to find the defendant guilty of the lesser-included offense of attempted theft. Following our consideration of the arguments of the parties, the record, and pertinent case law, we agree with the State.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the
> jury see the witnesses face to face, hear their testimony and observe their

demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

A Humphreys County grand jury indicted the defendant with theft, but following trial, the jury found the defendant guilty of the lesser-included offense of attempted theft. "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). Theft of property valued at $2500.00 but less than $10,000 is a Class D felony, and attempted theft of property valued the same is a Class E felony. Tenn. Code Ann. §§ 39-14-105(a)(3); 39-12-107(a). A person commits criminal attempt when, with the culpability required for the attempted crime, he or she:

(1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a).

The State must essentially prove two elements in order to prove criminal attempt: (1) the culpability required for the attempted offense; and (2) an act or acts in furtherance of the attempted offense. *Wyatt v. State*, 24 S.W.3d 319, 323 (Tenn. 2009). "Proof that the defendant failed to complete the crime is not an element of the offense of criminal

attempt." *State v. Thorpe*, 463 S.W.3d 851, 862 (Tenn. 2015). Likewise, completion of the attempted offense is not a defense to prosecution for criminal attempt. Tenn. Code Ann. § 39-12-101(c). Accordingly, "proof, even uncontroverted proof, that a defendant completed a crime, in and of itself, does not shield a defendant from a conviction for criminal attempt of the crime allegedly committed." *Thorpe*, 463 S.W.3d at 863.

Here, the State presented proof the defendant, who was the mayor of the City of New Johnsonville at the time, asked Mr. Kent, a city employee, to drive to Columbia, South Carolina and pick up a truck being purchased for the defendant's personal use. The defendant asked Mr. Kent to make this trip during the workweek but assumed Mr. Kent would take time off from his job to do so. The defendant, however, did not request that Mr. Kent take a vacation day in order to travel to South Carolina at his request. Mr. Kent, after advising the defendant of his intention of doing so, brought his brother, a contract worker for the City of New Johnsonville, with him. The men traveled to South Carolina and back on September 6 and 7, 2012, and both subsequently submitted timecards to the City of New Johnsonville requesting payment from the city for work on September 6 and 7. Mr. Kent received $303.00 in compensation from the City of New Johnsonville for the time he allegedly spent working on September 6 and 7, and his brother received $297.00 in compensation from the City of New Johnsonville for the time he allegedly spent working on the same dates.

The defendant, at the very least, knew early the morning of September 7, 2012, that Mr. Kent utilized a truck owned by the City of New Johnsonville when performing this personal errand. The defendant then directed the use of $990.00 in city funds to pay for the tow of the city-owned truck, borrowed trailer, and his own newly purchased truck. The defendant further approved the use of $5500.00 in city funds to pay for the repair of the city-owned vehicle that broke down during the course of the trip. Once the public became aware of the incident, the defendant repaid the cost of the gas and the tow to Madison and deducted two vacation days from Mr. Kent's leave bank.

Viewing this evidence in a light most favorable to the State, a reasonable juror could conclude the defendant intended to deprive the City of New Johnsonville of property and took substantial steps towards doing so. While the State also presented sufficient evidence for a reasonable juror to find the defendant completed the theft, the jury was free to accredit all or only a portion of the testimony rendered at trial. *See State v. Richmond*, 90 S.W.3d 648, 660 (Tenn. 2002) (stating, "the jury is free to reject any evidence offered by the State, no matter how uncontroverted or uncontested a particular fact or element may appear"). The State did not have an obligation to establish the defendant failed to complete the theft in order for the jury to return a guilty verdict as to the lesser-included offense of attempted theft. It was within the province of the jury to

instead convict the defendant of the lesser-included offense of attempted theft, and we cannot overturn a verdict by speculating as to how and why the jurors reached it. *See Wiggins v. State*, 498 S.W.2d 92, 94 (Tenn. 1973) (holding, "[t]his Court will not upset a seemingly inconsistent verdict by speculating as to the jury's reasoning if we are satisfied that the evidence establishes guilt of the offense upon which the conviction was returned"). The evidence was sufficient to support the defendant's conviction for attempted theft, so he is not entitled to relief.

## II.    Judicial Diversion

Next, the defendant contends the trial court erred when denying his request for judicial diversion because the factors the trial court relied on when denying the request were not supported by the evidence presented during the sentencing hearing. The State maintains the trial court properly exercised its discretion when denying the defendant's request for judicial diversion. For the reasons discussed *infra*, we agree with the State.

Judicial diversion is a means by which qualified defendants may avoid a criminal record following a guilty plea or conviction by successfully completing a period of probation and payment of court-imposed supervision fees. Tenn. Code Ann. §40-35-313. "Qualified defendant" is a statutorily defined term referring to a defendant who:

(a) Is found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;

(b) Is not seeking deferral of further proceedings for any offense committed by any elected or appointed person in the executive, legislative or judicial branch of the state or any political subdivision of the state, which offense was committed in the person's official capacity or involved the duties of the person's office;

(c) Is not seeking deferral of further proceedings for a sexual offense, a violation of § 39-15-502, § 71-6-117, or § 71-6-119, driving under the influence of an intoxicant as prohibited by § 55-10-401, vehicular assault under § 39-13-106 prior to service of the minimum sentence required by § 39-13-106, or a Class A or B felony;

(d) Has not previously been convicted of a felony or a Class A misdemeanor for which a sentence of confinement is served; and

(e) Has not previously been granted judicial diversion under this chapter or pretrial diversion.

Tenn. Code Ann. § 40-35-313(a)(1)(B)(i).

While not raised by the parties, we note the defendant was not a "qualified defendant" for the purpose of judicial diversion. The defendant sought deferral for his conviction of theft, an offense he committed while the mayor of the City of New Johnsonville, a political subdivision of the state. This offense was committed in his official capacity and involved the duties of his office because, as mayor, the defendant directed the use of the City of New Johnsonville's money to pay for the tow expenses and repair of the truck. As such, the defendant was not qualified to receive judicial diversion, and the trial court properly denied his request for such. *Id.* § 40-35-313(a)(1)(B)(i)*(b)*. Accordingly, we affirm the judgment of the trial court.

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
J. ROSS DYER, JUDGE